**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELLIOT M. MEGDAL and ALANA K. MEGDAL, as trustees of the Megdal Family Trust dated July 2, 1996, | ) | |
| | ) | Case No. 16-cv-0404 |
| Plaintiffs, | ) | |
| | ) | Hon. Joan B. Gottschall |
| v. | ) | Mag. Sheila M. Finnegan |
| PETSMART, INC., a Delaware corporation, and THE TILE SHOP, LLC, a Delaware limited liability company, | ) | |
| Defendants. | ) | |
| PETSMART, INC., a Delaware corporation, Defendant, Third-party Plaintiff, counter-Defendant | ) | |
| v. | ) | |
| THE TILE SHOP, LLC, a Delaware LLC, Third-Party Defendant, Counter-plaintiff | ) | |

**SECOND AMENDED COMPLAINT AT LAW**

Come now the Plaintiffs, Elliot M. Megdal and Alana K. Megdal, as trustees of the Megdal Family Trust dated July 2, 1996, by and through their attorneys, Becker Gurian and Elizabeth D. Sharp, P. C., and complaining of Defendants, PetSmart, Inc. and the Tile Shop, LLC , state as follows:

1. At all relevant times, Elliot M. Megdal and Alana K. Megdal (hereinafter collectively referred to as “Megdal”) were residents of the State of California.

2. At all relevant times, PetSmart, Inc. (hereinafter referred to as "PetSmart") was a Delaware corporation that is authorized to do business in the State of Illinois.

3. At all relevant times, The Tile Shop, LLC. (hereinafter referred to as "The Tile Shop") was a Delaware limited liability company that is authorized to do business in the State of Illinois.

**JURISDICTION AND VENUE**

4. This court has jurisdiction of this matter as the parties are citizens of different states and the amount in controversy exceeds $75,000.00 28 U.S.C. § 1332.

5. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred within this district. In addition, PetSmart and The Tile Shop are residents of this jurisdiction, each maintaining a registered agent authorized to receive service of process in Illinois.

**FACTS COMMON TO ALL COUNTS**

6. On or about February 28, 1996, PMT Investors # 1, Ltd. (hereinafter referred to as "PMT"), as landlord, entered into a long term lease agreement (hereinafter referred to as "the PetSmart Lease") with PetSmart for the premises commonly known as 1285 E. Higgins Road, Schaumburg, Cook County, Illinois (hereinafter referred to as "the Premises"). (A true and correct copy of the Lease is attached hereto and incorporated herein as Exhibit 1 ("Ex. 1")).

7. Subsequent to the execution of the PetSmart Lease, AMPIC Associates became the successor-in-interest to PMT Investors #1, Ltd.

8. On or about December 23, 1998, AMPIC Associates, as successor-in-interest, assigned the PetSmart Lease to Elliot Megdal and Alana Megdal, individually.

9. On or about June 20, 2001 Elliot Megdal and Alana Megdal, individually, transferred their ownership interest in the Premises, including its interest in the PetSmart Lease, to Elliot M. Megdal and Alana K. Megdal, as trustees of the Megdal Family Trust dated July 2, 1996 via quitclaim deed. (A true and correct copy of the Quitclaim Deed is attached hereto and incorporated herein as Exhibit 2).

10. The PetSmart Lease is a "Net, Net, Net Lease" and the term of the lease was for 20 years, beginning on February 28, 1996 and ending on February 28, 2016. (Ex. 1, ¶¶ 3.1 and 4.4).

11. Additionally, under the PetSmart Lease, PetSmart had an option to extend the Lease for four (4) successive additional renewal periods of five years each, which would be deemed automatically exercised unless PetSmart delivered written notice to Landlord, not less than 180 days prior to the expiration of the then unexpired term, that Tenant was electing not to exercise any further renewal option. (Ex. 1, ¶¶ 5.1 and 5.2).

12. Section 13.1 of the PetSmart Lease required PetSmart to

> at its own sole cost and expense keep the entire Leased Premises, both the Building and the Land, in good order, maintenance and repair, including maintenance and repair **and any necessary replacement** of all **structural** or load-bearing elements, **roofs,** walls, foundations, heating, ventilating and air conditioning systems, windows, walls, doors, electrical systems and components of the Premises…... Tenant must make all repairs, corrections, improvements, replacements or alterations necessitated by age, Tenant's use, the elements or required pursuant to Legal Requirements and Insurance Requirements.

(Ex. 1, ¶ 13.1, emphasis added).

13. Further, Section 13.2 of the PetSmart Lease provides, in relevant part:

> If Tenant fails to perform its obligations under this Section 13, Landlord may at its option… perform such obligations on Tenant's behalf and put the same in good order, condition repair and the cost paid or incurred by Landlord in performing Tenant's obligations, together with interest at the Interest Rate from the date expended by Landlord until repaid in full shall become due and payable as additional rent to Landlord…It is intended by the parties hereto

> that Landlord shall have no obligation, in any manner whatsoever, to repair and maintain the Premises or the equipment therein or any part thereof, whether structural or non-structural, all of which obligations are intended to be that of Tenant. In no event shall Landlord be obligated to pay for repairs or replacements of any part of the Premises.

(Ex. 1, ¶ 13.2).

14. Section 15.1 of the Lease requires PetSmart to indemnify the Landlord for:

> any and all claims arising from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of the Lease. . . and from and against all costs, reasonable and necessary counsel fees, expenses and liabilities incurred in or about any such claim or action or proceeding brought thereon. . .

(Ex. 1, ¶ 15.1).

15. In addition, Section 18.1 of the PetSmart Lease provides:

> If the Leased Premises are totally or partially damaged or destroyed by storm, fire, lightning, earthquake, **or from any other cause whatsoever**, during the Term of this Lease whether or not such damage or destruction is covered by any insurance required to be maintained under Section 14 hereof, then tenant shall repair, restore, and rebuild the Premises in accordance with Legal Requirements and Insurance Requirements at the time of rebuilding to substantially the same condition existing immediately prior to such damages or destruction…..

(Ex. 1, ¶ 18.1, emphasis added).

16. Other provisions of the PetSmart Lease required PetSmart at the end of the Lease term to "surrender the Premises in good order and condition" and "in as good repair and clean condition as at the commencement of this Lease" (Ex. 1, ¶¶ 28 and 31).

17. Under Section 26 of the PetSmart Lease, PetSmart had the right to assign the Lease or sublet the whole or any part of the Premises. The PetSmart Lease provides:

> Tenant shall at all times remain fully responsible and primarily liable for compliance with all its obligations under the terms provisions and convents of this Lease, notwithstanding any assignment or sublet. Tenant's obligation shall continue as the obligations of a principal and not as the obligations of a surety or guarantor.

18. Pursuant to Section 41.1 of the PetSmart Lease, the prevailing party to the litigation is entitled to recover reasonable attorneys' fees and costs.

19. On or about June 11, 2003, The Tile Shop, LLC became the subtenant of PetSmart pursuant to a sublease executed by the parties on that date. The term of the Sublease began on July 1, 2003 and ended on February 28, 2016.

20. During this time, Megdal remained the Landlord to PetSmart under the PetSmart Lease.

21. To check on the condition of the Premises during the PetSmart Lease, Megdal periodically hired professional engineers and architects to inspect the condition of the Premises and report back.

22. One such inspection was conducted on March 12, 2012 by LM Associates, Inc. Elliot Megdal was present for the inspection of the Premises. Megdal received a Property Evaluation Report dated April 4, 2012 from LM Associates, Inc. which reported various poor conditions at the Premises including asphalt pavement in poor condition, that the majority of rooftop HVAC units were inoperable and that the roof was in need of both short term repairs and more extensive repair and replacement work in 2014. The report was sent via certified mail on April 12, 2012 to both PetSmart and The Tile Shop and written demand was made to repair all observed conditions, including the roof.

23. The LM Associates, Inc.'s report noted, "Indication was made that a significant roof leak occurred approximately 1-2 years ago near the northwest part of the building." The Evaluation Report noted delaminated sections of roofing, penetrations in the membranes at the roof parapets and rust stains and damage to the underside of the roof deck on the interior of the Premises due to roof leaks.

24. The LM Associates, Inc.'s Property Evaluation Report included a replacement reserve schedule. LM Associates, Inc. estimated the useful life of the balasted EPDM (ethylene propylene diene monomer (M-class) rubber) roofing at the Premises was 18 years, and estimated that in 2014 the deferred maintenance expenditures for replacing the roof would be $128,500.

25. Megdal demanded repair of these items at the Premises, and after several years, PetSmart and its subtenant The Tile Shop, LLC finished the repairs to the parking lot and replaced the HVAC units to Megdal's satisfaction. However, PetSmart disputed any responsibility for the roof.

26. Megdal then retained Illinois Roof Consulting Associates, Inc. ("IRCA") to inspect the roof.

27. On September 30, 2014, IRCA issued a report that determined many elements of the roof, including the roof membrane of unreinforced EPDM and the flashings, were in unsatisfactory conditions. IRCA noted reports of the roof continuing to leak despite recent repairs, and the overall physical condition and the overall performance of the roof system to be unsatisfactory. IRCA found that the roof had exceeded its useful service life of 16-18 years and recommended that the roof be replaced.

28. Megdal informed PetSmart of IRCA's findings.

29. Megdal demanded in writing that PetSmart replace the roof as recommended by its outside consultant in accordance with PetSmart's duties under the Lease.

30. On August 10, 2015, PetSmart issued a letter to Megdal's counsel in which PetSmart stated that it was refusing to replace the roof.

31. PetSmart delivered a notice to Megdal dated August 31, 2015 that it was not exercising its option to renew and would be vacating the Premises at the end of the initial lease term on February 28, 2016.

32. On September 30, 2015, PetSmart, through its counsel, issued a letter, reiterating its refusal to replace the roof, claiming the Lease did not require PetSmart to replace the roof at end of the Lease term.

33. Because of Tenant's refusal to satisfy its obligations under the Lease, and because of the deteriorated condition of the roof which continued to leak, in the Fall of 2016 Landlord engaged a roofing company to make the necessary repairs and replacements to the roof membrane at the Premises. The work is scheduled to proceed in the Spring of 2017.

**COUNT I**
**(Breach of Contract Against PetSmart-Roof)**

1-33. Megdal repeats and realleges Paragraphs 1-33 as Paragraphs 1-33 of this Count I as if fully restated herein.

34. Megdal has fully performed its duties under the PetSmart Lease.

35. By refusing to make necessary repairs and replacements of elements of the roof as required in the PetSmart Lease, PetSmart is in breach of its contractual duties under the PetSmart Lease.

36. As a result of PetSmart's breach, Megdal will incur damages in excess of $120,000.00 to perform the necessary repair and replacement work on the roof.

37. Additionally, Megdal is continuing to be damaged by PetSmart's actions due to Landord's inability to lease the Premises to a new tenant due to the poor and leaking condition of the roof.

38. Megdal is entitled to interest on the amounts it expended to make the necessary repairs and replacement work.

39. Megdal is entitled to indemnification for all amounts, including its attorneys' fees and costs expended in this action which arose from its claims of PetSmart's breach of the PetSmart Lease.

WHEREFORE, Elliott M. Megdal and Alana K. Megdal as trustees of the Megdal Family Trust dated July 2, 1996 respectfully request that this court enter judgment in their favor and against PetSmart, Inc. in the amount of at least $120,000.00, interest thereon, damages incurred by their inability to lease the Premises and any additional damages to the property that are discovered during the replacement of the roof, and their attorneys' fees and costs.

**COUNT II**
**(Breach of Contract Against PetSmart-Mold)**

1-33. Megdal restates and realleges Paragraphs 1-33 of Count I as Paragraphs 1-33 of this Count II as if fully restated herein.

34. The exterior wall of the Premises consists of plate glass windows and entry way.

35. Above the plate glass and entryway is a wall that is on the exterior of the main portion of the Premises and has a separate narrow parapet, similar to a flat roof.

36. Upon inspection of the premises in January of 2017, a leak with dripping water was observed on the interior of the entry way emanating from the drywall above the plate glass windows.

37. This leak is consistent with water damage observed in the drywall over the front entry way observed prior to the expiration of the PetSmart Lease.

38. Further inspection of the drywall revealed the existence of mold in the drywall above the entry way.

39. Inspection of the remaining portions of the Premises revealed water damage and mold in the drywall in the upper portion of the drywall in the utility area, emanating from roof leaks which had been observed prior to the expiration of the PetSmart Lease.

40. As a result of the failure of PetSmart to keep the Premises in good repair, Megdal will incur damages in excess of $45,000.00 to remediate the mold and to repair the damaged Premises.

WHEREFORE, Elliott M. Megdal and Alana K. Megdal as trustees of the Megdal Family Trust dated July 2, 1996 respectfully request that this court enter judgment in their favor and against PetSmart, Inc. in the amount of at least $45,000.00, interest thereon, attorneys' fees and costs.

**COUNT III**
**(Breach of Contract Against The Tile Shop-Mold)**

1-33. Megdal restates and realleges Paragraphs 1-33 of Count II as Paragraphs 1-33 of this Count III as if fully restated herein.

34. Following the expiration of the PetSmart lease, The Tile Shop remained in possession of the premises.

35. On February 29, 2016, Megdal and The Tile Shop entered into an Agreement of Lease. (Ex. 3 attached).

36. The term of the lease was for month-to month.

37. Section 9 of the Tile Shop lease provides

> Tenant shall at its own cost and expense keep the Leased Premises, both Building and the Land, in good order, maintenance and repair, including in good order, maintenance and repair the roof membrane, heating, ventilating and air conditioning systems, windows, doors, electrical systems and equipment, mechanical equipment, and plumbing and all other components of the Leased Premises…..

38. Section 22 of the Tile Shop Lease requires the Tile Shop to indemnify the Landlord for:

> any and all claims arising from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of the Lease. . . and from and against all costs, reasonable and necessary counsel fees, expenses and liabilities incurred in or about any such claim or action or proceeding brought thereon. . .

(Ex. 3, ¶ 22).

39. The Tile Shop vacated the premises on October 31, 2016.

40. From March 1, 2016, The Tile Shop was required to maintain the Premises in good order.

41. The Tile Shop was required to repair the Premises, including the area above the front windows and entry way to prevent water damage.

42. By failing to properly maintain the Premises and allowing the leaks to continue, The Tile Shop caused additional mold damage.

43. The Tile Shop was in breach of its contractual duties under the Tile Shop Lease.

44. Pursuant to Section 22 of the Tile Shop Lease, The Tile Shop is liable for Megdal's attorneys' fees and costs incurred for bringing this action against The Tile Shop for breach of its duties under The Tile Shop lease.

WHEREFORE, Elliott M. Megdal and Alana K. Megdal as trustees of the Megdal Family Trust dated July 2, 1996 respectfully request that this court enter judgment in their favor and against The Tile Shop, Inc. in the amount of at least $45,000.00, interest thereon and attorneys' fees and costs.

**COUNT IV**

**(Declaratory Relief – PetSmart, Inc.)**

1-33. Megdal restates and realleges Paragraphs 1-33 of Counts I and II as Paragraphs 1-33 of this Count IV as if fully restated herein.

34. At all relevant times, 735 ILCS §5/2-701 permits the bringing of and action seeking the declaration of rights of the parties when an actual controversy exists.

35. There is an actual controversy as the parties do not agree on the plain meaning of the PetSmart Lease, specifically Sections 13.1 and 18.1.

WHEREFORE, Elliott M. Megdal and Alana K. Megdal as trustees of the Megdal Family Trust dated July 2, 1996 respectfully request that this court enter judgment in their favor and declare that PetSmart, Inc. is required, under Sections 13.1 and 18.1 of the Lease to make necessary repairs and replacement of the roof, remediate the mold, award its attorneys' fees and costs, and for any further relief deemed necessary and just.

**COUNT V**
**(Declaratory Relief – The Tile Shop, Inc.)**

1-33. Megdal restates and realleges Paragraphs 1-33 of Count IV as Paragraphs 1-33 of this Count V as if fully restated herein.

34. At all relevant times, 735 ILCS §5/2-701 permits the bringing of and action seeking the declaration of rights of the parties when an actual controversy exists.

35. There is an actual controversy as the parties do not agree on the plain meaning of the lease, specifically Section 9.

WHEREFORE, Elliott M. Megdal and Alana K. Megdal as trustees of the Megdal Family Trust dated July 2, 1996 respectfully request that this court enter judgment in their favor and declare that Tile Shop, LLC is required, under Section 9 of the Lease to maintain the Premises,

remediate the mold, award its attorneys' fees and costs, and for any further relief deemed necessary and just.

Respectfully submitted,

**PLAINTIFFS ELLIOT M. MEGDAL and ALANA K. MEGDAL, as Trustees of Megdal Family Trust dated July 2, 1996**

*/s/Elizabeth D. Sharp*
Elizabeth D. Sharp
Attorney for Plaintiffs


BARRY L. MORTGE
Barry I. Mortge, of Counsel
Becker Gurian
513 Central Ave., Suite 400
Highland Park, IL 60035
Telephone: (847) 609-0234

Law Offices of Barry I. Mortge
1272 Sandhurst Drive
Buffalo Grove, IL 60089
Telephone: (847) 609-0234
Email: Barry@beckergurian.com

ELIZABETH D. SHARP
The Law Offices of Elizabeth D. Sharp, P.C.
200 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 346-1726
Fax: (312) 346-2069
Email: lsharp@sharp-law.com

Counsel to Plaintiffs,
Elliot M. Megdal and Alana K. Megdal,
as trustees of the Megdal Family Trust
dated July 2, 1996

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 3, 2017 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which serves all counsel appearing on ECF. I further certify that I served the foregoing document and the notice of electronic filing by electronic mail to the following persons: NONE

Dated: April 3, 2017

By: *s/ Elizabeth D. Sharp*

ELIZABETH D. SHARP
The Law Offices of Elizabeth D. Sharp, P.C.
200 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 346-1726
Fax: (312) 346-2069
Email: lsharp@sharp-law.com